## In re Estate of Ruth Hart Eddy

[380 A.2d 530]

No. 366-76

Present: **Barney, C.J., Daley, Larrow, Billings, and Hill, JJ.**

Opinion Filed October 31, 1977

*John H. Williams, II,* Bennington, and *Edward H. Pattison,* Troy, New York, for Executors.

*M. Jerome Diamond,* Attorney General, and *Richard M. Finn,* Assistant Attorney General, Montpelier, for State.

**Larrow, J.** Under challenge here, by direct appeal from the Probate Court for the District of Bennington, is (a) the validity of the charge imposed by 32 V.S.A. § 1434(1), prior to 1971 amendment, for granting letters testamentary or of administration, (b) the validity of the charge imposed by 32 V.S.A. § 1434(22), prior to 1971 amendment, and approximately doubled by that amendment now set out in 32 V.S.A. § 1434(6), for distribution of each estate by decree, and (c) the computation of these charges by the probate court, which used date of death of the decedent to determine the charge for letters testamentary, and values at date of death, plus income and net appreciation in values, to determine the distribution charge. These charges are denominated by the statute as "fees" for the benefit of the State. But appellant executors claim each charge is in fact a tax, and invalid; in the alternative they argue improper computation. The State claims the charge for letters testamentary is a reasonable fee for court services. It makes no serious argument that the distribution charge can be justified as a fee, but claims that it is a valid tax, even though not so denominated. It also defends the court's computation and choices of effective dates, none of which have explicit definition in the statute.

Because of the time elements involved in the litigation, a short table of events is essential to understanding of the issues. The significant dates are as follows:

| | |
|---|---|
| June 15, 1971: | Death of the decedent Ruth Hart Eddy. |
| June 17, 1971: | Petition for probate filed. |
| July 1, 1971: | Effective date of 1971 amendments to 32 V.S.A. § 1434, eliminating the graduated fee for letters testamentary, and doubling the graduated distribution fee. |

July 7, 1971: Will proved and allowed.

July 13, 1971: Letters testamentary issued.

December 15, 1975: Final account filed.

Only decedent's death and the petition for probate preceded the effective dates of the amendments in question.

### I. The fee for letters testamentary.

██ We have little difficulty in agreeing with the contention of appellants that the fee for letters testamentary was imposed improperly by the probate court. We reach this decision without considering whether it is supportable as a fee, or must be viewed as a tax. The amount ($7,570) in relation to an estate exceeding $9,000,000 on any computation might present a close case for the test of reasonableness upon a fuller record. Cf. *Foreman* v. *Oakland County Treasurer*, 57 Mich. App. 231, 226 N.W.2d 67 (1974). Future litigation does not require this determination because the fee has been repealed.

The imposition was improper in this case because of the dates involved. The State in effect concedes that "consistency" requires this holding. Viewed as either a fee or a tax, the charge is imposed for a particular act, the issuance of letters testamentary, and this act did not occur until after repeal of the charge. 1 V.S.A. § 214(b) provides in pertinent part:

> The amendment or repeal of an act or statutory provision ... shall not:
>
> ....
>
> (2) Affect any right, privilege, obligation or liability acquired, accrued or incurred prior to the effective date of the amendment or repeal;

Simply put, there was no liability or obligation incurred here for the fee in question prior to repeal of the statute which imposed it. The issuance of such letters is not automatic following petition for probate. The will might have been disallowed, precluding issuance of letters testamentary. Probate might have been refused for lack of jurisdiction or

venue. It would not, we think, be seriously argued that there would then be any liability for the fee in question. By no construction can this liability be said to attach before the actual rendition of the service upon which it is predicated. In this case, that date was July 13, 1971, some 12 days after the statute imposing the fee was repealed. The proper fee was the entry fee of $15.00, now established by 32 V.S.A. § 1434(1), and applicable regardless of the assets in the estate.

## II. The fee for distribution by decree.

Prior to the amendment effective July 1, 1971, 32 V.S.A. § 1434(22) imposed a distribution fee, for the benefit of the State, of $4.00, plus $20 for the first $10,000 in value of the residue of the estate, and $50 for each additional $10,000, or larger fraction thereof in value of such residue. The 1971 amendment, now 32 V.S.A. § 1434(6), increased the $4.00 fee to $15.00, and doubled the remainder of the fees. For practical purposes, the fee prior to amendment approximated ½% of the value of the residue, and after amendment, 1%. In the instant case, with the inclusion in residue of appreciation and income, the fee was computed by the court under the amended statute at $100,140. Under the prior statute, it would have been approximately one-half that amount.

Appellants argue vigorously that a "fee" of these proportions is not a "fee" at all, but a tax, the validity of which must be tested as such. The State does not argue this point, and agrees that the amount assessed bears little relation to the expenses of the probate court, the annual salary of the probate judge ($11,300) or the nature and extent of the necessary services provided by the court. The "fee" provides general revenue and is determined wholly by the value of the residue. It is, therefore, in the nature of a tax, despite the nomenclature used by the legislative body. *State* v. *Caplan*, 100 Vt. 140, 151-52, 135 A. 705 (1927); *State* v. *Hoyt*, 71 Vt. 59, 63, 42 A. 973 (1898); *Berryman* v. *Bowers*, 31 Ariz. 56, 250 P. 361 (1926); *Smith* v. *Carbon County*, 90 Utah 560, 63 P.2d 259 (1936); 1 T. Cooley, Taxation § 33 (4th ed. 1924); 71 Am. Jur. 2d *State and Local Taxation* § 17.

*Foreman* v. *Oakland County Treasurer, supra,* cited for the general proposition that a graduated probate fee schedule can be sustained, is not authority for sustaining the fee schedule here as such. In that case, the percentage charge scaled

downward as the estate became larger and leveled off at 1/32%. Applied to this estate, the total assessment would have been $4,312.50, about 1/25th of the assessment here. The reasonable relationship between charges and services rendered was not negated in that case as a matter of law, but it is so negated here. The distribution "fee," either before or after amendment, is on its face totally disproportionate to any services rendered by the probate court. If its imposition, at the rate of either ½% or 1% is to be justified, it must be justified as a tax. *State* v. *Caplan, supra,* 100 Vt. at 152.

 We need spend little time considering possible justification of the levy as a property tax, admittedly subject to the proportional contribution clause contained in Ch. I, Art. 9, of the Vermont Constitution. The tax is not one on property, as we have repeatedly held. *In re Estate of Boynton,* 121 Vt. 98, 104, 148 A.2d 115 (1959); *In re Hickok's Estate,* 78 Vt. 259, 264, 62 A. 724 (1906). Both *Boynton* and *Hickok* are authority for the proposition that our former inheritance tax, an obligation of the recipient, was a tax upon the right of succession to property. And it is equally clear that our present estate tax (32 V.S.A. § 7441 et seq.), patterned upon the federal tax, is a tax upon the privilege of transfer at death, based upon what is left by the decedent, not upon what comes to the beneficiaries or the heirs. *Chase National Bank* v. *United States,* 278 U.S. 327, 334 (1929). We do not, however, adhere to the view held in some jurisdictions that this ends consideration of the matter because constitutional provisions relating to uniformity of taxation apply only to property taxes. Cf. *In re Estate of Zoller,* 53 Del. 448, 171 A.2d 375 (1961); *Anderson* v. *Page,* 208 S.C. 146, 37 S.E.2d 289 (1946). We long ago recognized that our proportional contribution clause applies, not only to property taxes or any particular subject of taxation, but to "the entire burden cast upon the taxpayer." *In re Hickok's Estate, supra,* 78 Vt. at 264. And, as far as classifications are concerned, our proportional contribution clause is the practical equivalent of the equal protection clause of the Fourteenth Amendment to the United States Constitution. *State* v. *Auclair,* 110 Vt. 147, 161, 4 A.2d 107 (1939); *Clark* v. *City of Burlington,* 101 Vt. 391, 409, 143 A. 677 (1928). Under it, legislative classifications may be imposed, if they are based upon a real and substantial difference, and are not purely arbitrary or

irrational. *Auclair, supra,* 110 Vt. at 160-61. The burden of demonstrating unconstitutionality rests upon the contesting taxpayer. *Andrews* v. *Lathrop,* 132 Vt. 256, 263, 315 A.2d 860 (1974).

■ We therefore examine the tax here in question to determine whether it contains arbitrary or irrational classifications. With no evidence having been taken below, we confine our scrutiny to the facial aspects of the statute and other related enactments, and such facts as we may notice as matters of general knowledge. Such examination discloses:

(1) The tax imposed is by brackets of $10,000 resulting, in small estates at least, in the possibility of rather great percentage discrepancies. A residue, for instance, of $9,990, would result in a tax of $15.00, while one of $10,000 would yield a tax of $55.00; a residue of $14,990 would yield $55.00 also, while one of $15,510 would yield $155.00. Similar discrepancies, although decreasing when viewed as a percentage of the whole, appear throughout the schedule, and similar percentages, roughly one-half in dollar amount, appear in the pre-1971 levy. No optional computation is provided for, as is usual where taxes are expressed in terms of amounts per dollar brackets.

(2) The pre-1971 statute imposed only a $2.00 levy for settling a trustee's account. The present statute imposes a tax on final settlement, based on trust assets, on a scale equal to that for decree of distribution. 32 V.S.A. § 1434(5). But there is no levy on assets passing upon the death of a decedent by virtue of a revocable *inter vivos* trust. And the result of the levy for final settlement of a trustee's account is double taxation where a testamentary trust is involved in the passing of the decedent's interest. If the tax is, as we have indicated, one upon transfers effective at death, it appears both arbitrary and unreasonable that one mode should be subject to no tax, another mode to a 1% tax, and a third mode to a 2% tax. Thus a decedent's estate subject to the present statute would incur (a) no liability where an *inter vivos* trust passes the assets upon death, (b) liability where the assets pass by will either directly or into a "pour over" trust established *inter vivos,* and (c) double liability where both a will and a testamentary trust are involved. The double liability aspect was not present prior to 1971, when the graduated fee for settlement of trusts was added, but (a) and (b) were both applicable. No rational basis for these classifications is apparent, and none seems to have been considered by the

Legislature. The stated purposes of House Bill No. 201, 1971, included consolidating court fees, cutting down on paper work, and increasing probate court fees. Committee reports are at best sketchy, and reveal no consideration of the distinction between a general revenue measure and a fee system for services rendered. We have, therefore, no expressed legislative classification to honor or to reject, and no apparent basis for the classification which in fact resulted from the legislation.

(3) As we pointed out in *Bassett* v. *Vermont Tax Department*, 135 Vt. 257, 376 A.2d 731 (1977), our estate tax seems to preempt the field which this levy would invade. Based upon the federal estate tax and levied in the form of a percentage of that tax, 32 V.S.A. § 7441 et seq. expresses a clear legislative policy of a straightforward percentage tax upon property passing by virtue of a decedent's death, reaching transactions not covered by this levy, as indicated in (2), *supra*, and having exemptions, notably charitable bequests, not provided for in the distribution "fee." Intended to apply to decedents dying after January 1, 1971 (as here), it has the expressed intent "to conform the Vermont inheritance tax laws with the estate and gift tax provisions of the United States Internal Revenue Code, except as otherwise expressly provided...." 32 V.S.A. § 7401. With this broad policy so clearly expressed, we are unwilling to infer a legislative intent, *sub silentio*, not only to enact a tax, but to enact one based upon entirely different principles, *i.e.*, effective only upon resort to the probate court.

We therefore conclude that, where there is no apparent legislative intent to impose a tax, where the "fee" rates vary greatly and arbitrarily without apparent reason, and where the amount of the levy varies greatly depending solely upon the technical process used to achieve a passing of the decedent's interest upon death, there is a palpable violation of the proportional contribution clause contained in Ch. I, Art. 9, of the Vermont Constitution, and the levy cannot be sustained, either as imposed prior to 1971 or in the amount, roughly double, set out in the 1971 amendment.

### III. *Applicability dates and inclusions in residue.*

As we have already held, the repealed fee for issuance of letters testamentary contained in the pre-1971 statute was

assessed improperly, and in its stead should be assessed the entry fee of $15.00 imposed as of July 1, 1971, before the letters testamentary were issued. This fee is a set one, and we need not consider any computation questions raised and briefed in this connection.

The larger part of the levy below, *i.e.*, the distribution "fee," we have held unconstitutional, so that the questions relating to inclusion of income and appreciation of assets within the basis for the levy are no longer pertinent.

*So much of the order of the Bennington Probate Court, dated November 29, 1976, as relates to probate fees, is vacated, and the cause is remanded for revision of said order consistent with the views herein expressed and return to the appellants of overpayment of fees paid under protest and escrowed pending appeal by agreement.*